UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TERESA A. THOMAS,

                                        CASE NO.: 3:22-cv-00925-TJC-JBT

               Plaintiff,

vs.

SCOTTY RHODEN, IN HIS OFFICIAL
CAPACITY AS SHERIFF OF BAKER
COUNTY,

and

DEPUTY JARED GARY SHARMAN,
individually under color of law,

and

DEPUTY MARC HEATH,
individually under color of law,

and

DEPUTY JEFFREY HIGGINBOTHAM,
individually under color of law,

               Defendants.

_____/

## FIRST AMENDED COMPLAINT

## PRELIMINARY STATEMENT

1.      This is an action filed by the Plaintiff seeking relief for unlawful deprivation of rights secured by the 4th, 5th and 14th Amendments to the United States Constitution pursuant to 42 USC section 1983.

2.      Pendent state claims are added as there is a common nucleus of fact.

## PARTIES

3.      At all times alleged hereto Plaintiff, Teresa A. Thomas (herein identified as "THOMAS"), was a resident of City of Raiford, State of Florida.

4.      At all times alleged hereto, the Defendant, the SCOTTY RHODEN, IN HIS OFFICIAL CAPACITY AS SHERIFF OF BAKER COUNTY (herein identified as "SHERIFF"), was a municipal entity established by and through the Constitution of the State of Florida.

5.      At all times all alleged hereto, Defendant JARED GARY SHARMAN (herein known as "SHARMAN") was a law enforcement officer employed by and through the Defendant Baker County Sheriff. This action is filed against Defendant Jared Gary Sharman in Defendant's individual capacity under color of law.

6.      At all times alleged hereto, Defendant Deputy MARC HEATH (herein known as "HEATH") was a law-enforcement officer employed by and through the Defendant Baker County Sheriff. This action is filed against Defendant HEATH in Defendant HEATH'S individual capacity under color of law.

7.      At all times alleged hereto, Defendant JEFFREY HIGGINBOTHAM (herein known as "HIGGINBOTHAM") was a law-enforcement officer employed by and through the Defendant Baker County Sheriff. This action is filed against Defendant HIGGINBOTHAM in his official capacity under color of law.

## COUNT I

### EXCESSIVE FORCE/UNREASONABLE SEARCH
### AND SEIZURE DEFENDANT SHARMAN 42 USC SECTION 1983

8.      On or about August 26, 2018, the Plaintiff was outside in the driveway of the

Plaintiff's husband's residence located at 76 N. Lowder St., Macclenny, Florida.

9.      The Plaintiff was at that residence for the purpose of retrieving money owed

by the Plaintiff's husband to the Plaintiff.

10.      Plaintiff had been invited by Plaintiff's husband.

11.      The SHERIFF arrived at that location by and through the SHERIFF'S

deputies Defendant SHARMAN, along with HEATH and HIGGINBOTHAM, who

approached the Plaintiff.

12.      Upon approaching the Plaintiff, the SHERIFF, by and through Defendant

SHARMAN, along with HEATH and HIGGINBOTHAM, asked why the Plaintiff was at

that location.

13.      The Plaintiff responded Plaintiff's husband invited Plaintiff such that

Plaintiff could receive those monies.

14.      Upon questioning of the Plaintiff's husband by the SHERIFF'S deputies,

Defendant SHARMAN, along with HEATH and HIGGINBOTHAM, requested the

Plaintiff leave the residence.

15.      The Plaintiff requested information from HEATH as to the status of the law

as to whether the Plaintiff was required to leave as the Plaintiff was married to the occupant.

16.      While HEATH was speaking with the Plaintiff, Defendant SHARMAN

began to yell, moving towards the Plaintiff, stating the Plaintiff was going to jail.

17.    Plaintiff began to back towards Plaintiff's car with Plaintiff's hands in the air indicating Plaintiff was leaving.

18.    Plaintiff's husband proceeded to state to SHERIFF's deputies, those being Defendant SHARMAN, HEATH and HIGGINBOTHAM, the Plaintiff was leaving.

19.    Defendant SHARMAN, while Plaintiff was backing up towards Plaintiff's vehicle, then proceeded to grab Plaintiff by Plaintiff's arms, physically picked Plaintiff off of Plaintiff's feet and forcibly threw Plaintiff on the ground face down.

20.    Defendant SHARMAN then proceeded to put Defendant SHARMAN's knee in the middle of Plaintiff's back.

21.    Handcuffs were then placed on the Plaintiff by HEATH.

22.    HIGGINBOTHAM was an estimated fifty (50) feet from the Plaintiff.

23.    At all times alleged hereto, SHERIFF, by and through HIGGINBOTHAM and HEATH were aware of these actions by Defendant SHARMAN, failed to protect Plaintiff from harm, and failed to intervene.

24.    During the time Plaintiff was detained and placed in handcuffs, Plaintiff had a right, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, to be free from excessive force and unreasonable search and seizure, as applied 42 USC §1983.

25.    Defendant SHARMAN knew or should have known that when arresting an individual such as the Plaintiff, the amount of force used in the arrest must be reasonably proportionate to the need for that force, inclusive of whether a suspect is a physical threat,

and failure to do so would be a violation of an individual's constitutional rights.

26.    At no time was the Plaintiff a physical threat to Defendant SHARMAN, HEATH nor HIGGINBOTHAM.

27.    The conduct of Defendant SHARMAN violated Plaintiff's constitutional right to be free from unreasonable search and seizure and excessive force.

28.    Subsequent to the actions of defendant SHARMAN, Plaintiff was noticeably limping, and bruises and scratches on Plaintiff's face and left knee and Plaintiff was complaining of pain. Plaintiff's request for medical treatment was denied and rather, plaintiff was taken to the branch jail.

29.    As a result Plaintiff suffered injury to Plaintiff's left shoulder resulting in surgery for removal of a tumor, a torn shoulder, injury to Plaintiff's left arm, a swollen, bruised and sprained left ankle, a concussion, a lower back injury, a hip injury, a neck injury, a cut lip, with resulting medical treatment, accrual of medical bills, loss of income, pain-and-suffering, and mental anguish and humiliation. The losses are continuing. and Plaintiff is permanently disabled.

30.    But for the actions of Defendant SHARMAN in violating Plaintiff's constitutional rights, Plaintiff would not have suffered those losses.

31.    The actions of Defendant SHARMAN were willful and intentional.

32.    Plaintiff has retained undersigned counsel to represent Plaintiff in this matter agreed to pay counsel a reasonable fee.

WHEREFORE Plaintiff demands judgment for damages against Defendant SHARMAN, punitive damages, attorneys fees pursuant to 42 U.S.C.§1988 and trial by

jury.

## COUNT II

## UNREASONABLE SEARCH AND SEIZURE AS TO DEFENDANT HEATH INDIVIDUALLY UNDER COLOR OF LAW 42 USC Section 1983

33.    On or about August 26, 2018, the Plaintiff was outside in the driveway of the Plaintiff's husband's residence located at 76 N. Lowder St., Macclenny, Florida.

34.    The Plaintiff was at that residence for the purpose of retrieving money owed by the Plaintiff's husband to the Plaintiff.

35.    Plaintiff's husband had invited Plaintiff to the residence.

36.    The SHERIFF arrived at that location by and through the SHERIFF'S deputies SHARMAN, along with Defendant HEATH and HIGGINBOTHAM, who approached the Plaintiff.

37.    Upon approaching the Plaintiff, the SHERIFF, by and through SHARMAN, along with Defendant HEATH and HIGGINBOTHAM, asked why the Plaintiff was at that location

38.    The Plaintiff responded Plaintiff's husband invited Plaintiff such that Plaintiff could receive those monies.

39.    Upon questioning of the Plaintiff's husband by the SHERIFF'S deputies, SHARMAN, along with Defendant HEATH, and HIGGINBOTHAM, requested the Plaintiff leave the residence.

40.    The Plaintiff requested information from Defendant HEATH as to the status of the law as to whether the Plaintiff was required to leave as the Plaintiff was married to

the occupant.

41. While Defendant HEATH was speaking with the Plaintiff, SHARMAN began to yell, moving towards the Plaintiff, stating the Plaintiff was going to jail.

42. Plaintiff began to back towards Plaintiff's car with Plaintiff's hands in the air indicating Plaintiff was leaving.

43. Plaintiff's husband proceeded to state to the SHERIFF'S deputies SHARMAN, Defendant HEATH and HIGGINBOTHAM the Plaintiff was leaving.

44. SHARMAN then, while Plaintiff was backing up towards Plaintiff's vehicle, proceeded to grab Plaintiff by Plaintiff's arms, physically picked Plaintiff up off of Plaintiff's feet and forcibly threw Plaintiff on the ground face down.

45. SHARMAN then proceeded to put SHARMAN'S knee in the middle of Plaintiff's back.

46. Handcuffs were then placed on the Plaintiff by Defendant HEATH.

47. HIGGINBOTHAM was an estimated fifty (50) feet from Plaintiff.

48. At all times alleged hereto, SHERIFF, by and through HIGGINBOTHAM and Defendant HEATH were aware of these actions by SHARMAN, failed to protect Plaintiff from harm, and failed to intervene.

49. During the time Plaintiff was detained and placed in handcuffs, Plaintiff had a right, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, to be free from excessive force and unreasonable search and seizure, as applied 42 USC Section1983.

50. Defendant HEATH knew or should have known that when arresting an individual

such as the Plaintiff, the amount of force used in the arrest must be reasonably proportionate to the need for that force, inclusive of whether a suspect is a physical threat, and failure to do so would be a violation of an individual's constitutional rights.

51.   At no time was the Plaintiff a physical threat to SHARMAN, Defendant HEATH nor HIGGINBOTHAM.

52.   The conduct of SHARMAN violated Plaintiff's constitutional right to be free from unreasonable search and seizure and excessive force of which Defendant HEATH had a constitutional duty to intervene.

53.   As a result of the action and/or lack of action of Defendant HEATH, Plaintiff suffered injury to Plaintiff's left shoulder, a torn shoulder, injury to Plaintiff's left arm, a swollen, bruised and sprained left ankle, a concussion, a lower back injury, a hip injury, a neck injury, a cut lip, resulting in medical treatment, accrual of medical bills, loss of income, pain-and-suffering, and mental anguish and humiliation. The losses are continuing and resulted in permeant disability.

54.   But for the failure to act by Defendant HEATH, Plaintiff would not have suffered those injuries.

55.   Plaintiff has retained undersigned counsel to represent Plaintiff in this matter agreed to pay counsel a reasonable fee.

WHEREFORE Plaintiff demands judgment for damages against Defendant HEATH, attorneys fees pursuant to 42 U.S.C. section 1988 and trial by jury.

## COUNT III

### UNREASONABLE SEARCH AND SEIZURE AS TO DEFENDANT HIGGINBOTHAM INDIVIDUALLY UNDER COLOR OF LAW, 42 USC § 1983

56.    On or about August 26, 2018, the Plaintiff was outside in the driveway of the Plaintiff's husband's residence located at 76 N. Lowder St., Macclenny, Florida.

57.    The Plaintiff was at that residence for the purpose of retrieving money owed by the Plaintiff's husband to the Plaintiff.

58.    Plaintiff's husband had invited Plaintiff to the residence.

59.    The SHERIFF arrived at that location by and through the SHERIFF'S deputies SHARMAN, along with HEALTH and Defendant HIGGINBOTHAM, who approached the Plaintiff.

60.    Upon approaching the Plaintiff, the SHERIFF, by and through SHARMAN, along with HEATH and Defendant HIGGINBOTHAM, asked why the Plaintiff was at that location.

61.    The Plaintiff responded Plaintiff's husband invited Plaintiff such that Plaintiff could receive those monies.

62.    Upon questioning of the Plaintiff's husband by the SHERIFF'S deputies, SHARMAN, along with HEATH and Defendant HIGGINBOTHAM, requested the Plaintiff leave the residence.

63.    The Plaintiff requested information from HEATH as to the status of the law as to whether the Plaintiff was required to leave as the Plaintiff was married to the occupant.

64.    While HEATH was speaking with the Plaintiff, SHARMAN began to yell, moving towards the Plaintiff, stating the Plaintiff was going to jail.

65.    Plaintiff began to back towards Plaintiff's car with Plaintiff's hands in the air indicating Plaintiff was leaving.

66.    Plaintiff's husband indicated to SHARMAN, HEATH and Defendant HIGGINBOTHAM the Plaintiff was leaving.

67.    SHARMAN then proceeded to grab Plaintiff by Plaintiff's arms, physically picked Plaintiff up off of Plaintiff's feet and forcibly threw Plaintiff on the ground face down.

68.    SHARMAN then proceeded to put SHARMAN'S knee in the middle of Plaintiff's back.

69.    Handcuffs were then placed on the Plaintiff by HEATH.

70.    Defendant HIGGINBOTHAM was an estimated fifty (50) feet from Plaintiff.

71.    At all times alleged hereto, SHERIFF, by and through Defendant HIGGINBOTHAM and HEATH were aware of these actions by SHARMAN, failed to protect Plaintiff from harm, and failed to intervene.

72.    During the time Plaintiff was detained and placed in handcuffs, Plaintiff had a right, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, to be free from excessive force and unreasonable search and seizure, as applied 42 USC §1983.

73.    Defendant HIGGINBOTHAM knew or should have known that when arresting an individual such as the Plaintiff, the amount of force used in the arrest must be

reasonably proportionate to the need for that force, inclusive of whether a suspect is a physical threat, failure to do so would be a violation of an individual's constitutional rights and Defendant HIGGINBOTHAM had a duty to intervene.

74. At no time was the Plaintiff a physical threat to SHARMAN, HEATH nor Defendant HIGGINBOTHAM.

75. The conduct of SHARMAN violated Plaintiff's constitutional right to be free from unreasonable search and seizures and excessive force of which Defendant HIGGINBOTHAM had a constitutional duty to intervene.

76. As a result of the actions and/or lack of action of Defendant HIGGINBOTHAM Plaintiff suffered injury to Plaintiff's left shoulder resulting in surgery, injury to Plaintiff's left arm, a swollen, bruised and sprained left ankle, a concussion, a lower back injury, a hip injury, a neck injury, a cut lip, permanent disability, resulting medical treatment, accrual of medical bills, loss of income, pain-and-suffering, and mental anguish and humiliation. The losses are continuing and Plaintiff is permanently disabled.

77. But for the failure of Defendant HIGGINBOTHAM to intervene, Plaintiff would not have suffered those injuries.

78. Plaintiff has retained undersigned counsel to represent Plaintiff in this matter and agreed to pay counsel a reasonable fee.

WHEREFORE Plaintiff demands judgment for damages against Defendant HOGGINBOTHAM, attorneys fees pursuant to 42 U.S.C. § 1988 and trial by jury.

## COUNT IV

### UNREASONABLE SEARCH AND SEIZURE-LACK OF
### PROBABLE CAUSE- DEFENDANT SHARMAN INDIVIDUALLY
### UNDER COLOR OF LAW 42 USC § 1983

79.    On or about August 26, 2018, the Plaintiff was outside in the driveway of the Plaintiff's husband's residence located at 76 N. Lowder St., Macclenny, Florida.

80.    The Plaintiff was at that residence for the purpose of retrieving money owed by the Plaintiff's husband to the Plaintiff.

81.    Plaintiff had been invited to the residence by Plaintiff's husband.

82.    The SHERIFF arrived at that location by and through the SHERIFF'S deputies Defendant SHARMAN, along with HEATH and HIGGINBOTHAM, who approached the Plaintiff.

83.    Upon approaching the Plaintiff, the SHERIFF, by and through Defendant SHARMAN, along with HEATH and HIGGINBOTHAM, asked why the Plaintiff was at that location.

84.    The Plaintiff responded Plaintiff's husband invited Plaintiff such that Plaintiff could receive those monies.

85.    Upon questioning of the Plaintiff's husband by the SHERIFF'S deputies, Defendant SHARMAN, along with HEATH and HIGGINBOTHAM, requested the Plaintiff leave the residence.

86.    The Plaintiff requested information from HEATH as to the status of the law as to whether the Plaintiff was required to leave as the Plaintiff was married to the occupant.

87.    While HEATH was speaking with the Plaintiff, Defendant SHARMAN

began to yell, moving towards the Plaintiff, stating the Plaintiff was going to jail.

88.    Plaintiff began to back towards Plaintiff's car with Plaintiff's hands in the air indicating Plaintiff was leaving.

89.    Plaintiff's husband indicated to Defendant SHARMAN, HEALTH and HIGGINBOTHAM Plaintiff was leaving.

90.    Defendant SHARMAN then proceeded to grab Plaintiff by Plaintiff's arms, physically picked Plaintiff up off of Plaintiff's feet and forcibly threw Plaintiff on the ground face down.

91.    Defendant SHARMAN then proceeded to put Defendant SHARMAN'S knee in the middle of Plaintiff's back.

92.    Handcuffs were then placed on the Plaintiff by HEATH.

93.    At all times alleged hereto, the Plaintiff had a right, pursuant to the 4th and 14th Amendments to the United States Constitution to be free from arrest without probable cause and/or arguable probable cause.

94.    The Plaintiff's arrest by Defendant SHARMAN was without probable cause and/or arguable probable cause.

95.    Defendant SHARMAN knew or should have known that to arrest an individual without probable cause and/or arguable probable cause would be a violation of that individual's constitutional rights.

96.    The Defendant SHARMAN did not have probable cause and/or arguable probable to arrest the Plaintiff.

97.    As a result, Plaintiff's was physically detained, arrested and incarcerated,

Plaintiff suffered injury to Plaintiff's left shoulder resulting in surgery, injury to Plaintiff's left arm, a swollen, bruised and sprained left ankle, a concussion, a lower back injury, a hip injury, a neck injury, a cut lip, permanent disability, resulting in medical treatment, accrual of medical bills, loss of income, pain-and-suffering, and mental anguish and humiliation. The losses are continuing and Plaintiff is permanently disabled.

98.    But for the actions of Defendant SHARMAN, Plaintiff with not have suffered those losses or injuries.

99.    Plaintiff was criminally charged with a trespass and resisting arrest without violence wherein Plaintiff received a deferred prosecution agreement.

100.    The actions of Defendant SHARMAN were willful and intentional.

101.    Plaintiff has retained undersigned counsel to represent Plaintiff in this matter agreed to pay counsel a reasonable fee.

WHEREFORE Plaintiff demands judgment for damages against defendant SHARMAN, attorney's fees pursuant to 42 U.S.C. §1988, and trial by jury.

## COUNT V

## BATTERY AS TO DEFENDANT SCOTTY RHODEN, IN HIS OFFICIAL CAPACITY AS SHERIFF OF BAKER COUNTY

102.    On or about August 26, 2018, the Plaintiff was outside in the driveway of the Plaintiff's husband's residence located at 76 N. Lowder St., Macclenny, Florida.

103.    The Plaintiff was at that residence for the purpose of retrieving money owed by the Plaintiff's husband to the Plaintiff.

104.    Plaintiff had been invited by Plaintiff's husband.

14

105.    The Defendant SHERIFF arrived at that location by and through the Defendant SHERIFF'S deputies SHARMAN, along with HEATH and HIGGINBOTHAM, who approached the Plaintiff.

106.    Upon approaching the Plaintiff, the Defendant SHERIFF, by and through SHARMAN, along with HEATH and HIGGINBOTHAM, asked why the Plaintiff was at that location

107.    The Plaintiff responded Plaintiff's husband invited Plaintiff such that Plaintiff could receive those monies.

108.    Upon questioning of the Plaintiff's husband by the Defendant SHERIFF'S deputies, SHARMAN, along with HEATH and HIGGINBOTHAM, requested the Plaintiff leave the residence.

109.    The Plaintiff requested information from HEATH as to the status of the law as to whether the Plaintiff was required to leave as the Plaintiff was married to the occupant.

110.    While HEATH was speaking with the Plaintiff, Defendant SHERIFF began to yell, moving towards the Plaintiff, stating the Plaintiff was going to jail.

111.    Plaintiff began to back towards Plaintiff's car with Plaintiff's hands in the air indicating Plaintiff was leaving.

112.    Plaintiff's husband proceeded to state to Defendant SHERIFF's deputies, those being SHARMAN, HEATH and HIGGINBOTHAM, the Plaintiff was leaving.

113.    Defendant SHERIFF by and through SHARMAN, while Plaintiff was backing up towards Plaintiff's vehicle, then proceeded to grab Plaintiff by Plaintiff's arms, physically picked Plaintiff off of Plaintiff's feet and forcibly threw Plaintiff on the ground

face down.

114.    Defendant SHERIFF by and through Defendant's deputy SHARMAN then proceeded to put SHARMAN's knee in the middle of Plaintiff's back.

115.    Handcuffs were then placed on the Plaintiff by HEATH.

116.    The conduct of Defendant SHERIFF, by and through SHARMAN in grabbing Plaintiff's arms, picking Plaintiff up and forcibly throwing Plaintiff on the ground face down was without Plaintiff's consent and offensive to the Plaintiff.

117.    As a result Plaintiff suffered injury to Plaintiff's left shoulder resulting in surgery for removal of a tumor, a torn shoulder, injury to Plaintiff's left arm, a swollen, bruised and sprained left ankle, a concussion, a lower back injury, a hip injury, a neck injury, a cut lip, with resulting medical treatment, accrual of medical bills, loss of income, pain-and-suffering, and mental anguish and humiliation. The losses are continuing, and Plaintiff is permanently disabled.

118.    On or about March 4, 2019 Plaintiff served on defendant SHERIFF and the State of Florida Department of Financial Services a Notice of Intent to Sue pursuant to chapter 768 of the Florida Statutes and has exhausted any and all administrative remedies herein.

WHEREFORE Plaintiff demands judgment for damages against Defendant SHERIFF and trial by jury.

## COUNT VI

## VIOLATION OF FLORIDA STATUTE 732.701 et. seq. as to DEFENDANT SCOTTY RHODEN, IN HIS OFFICIAL CAPACITY AS SHERIFF OF BAKER COUNTY

119.    On or about August 26, 2018, the Plaintiff was outside in the driveway of the Plaintiff's husband's residence located at 76 N. Lowder St., Macclenny, Florida.

120.    The Plaintiff was at that residence for the purpose of retrieving money owed by the Plaintiff's husband to the Plaintiff.

121.    Plaintiff had been invited by Plaintiff's husband.

122.    The Defendant SHERIFF arrived at that location by and through the Defendant SHERIFF'S deputies SHARMAN, along with HEATH and HIGGINBOTHAM, who approached the Plaintiff.

123.    Upon approaching the Plaintiff, the Defendant SHERIFF, by and through SHARMAN, along with HEATH and HIGGINBOTHAM, asked why the Plaintiff was at that location

124.    The Plaintiff responded Plaintiff's husband invited Plaintiff such that Plaintiff could receive those monies.

125.    Upon questioning of the Plaintiff's husband by the Defendant SHERIFF'S deputies, SHARMAN, along with HEATH and HIGGINBOTHAM, requested the Plaintiff leave the residence.

126.    The Plaintiff requested information from HEATH as to the status of the law as to whether the Plaintiff was required to leave as the Plaintiff was married to the occupant.

127.    While HEATH was speaking with the Plaintiff, Defendant SHERIFF'S Deputy SHARMAN began to yell, moving towards the Plaintiff, stating the Plaintiff was going to jail.

128.    Plaintiff began to back towards Plaintiff's car with Plaintiff's hands in the air indicating Plaintiff was leaving.

129.    Plaintiff's husband proceeded to state to Defendant SHERIFF's deputies, SHARMAN, HEATH and HIGGINBOTHAM, the Plaintiff was leaving.

130.    Defendant SHERFIFF by and through Defendant SHERIFF'S Deputy SHARMAN, while Plaintiff was backing up towards Plaintiff's vehicle, then proceeded to grab Plaintiff by Plaintiff's arms, physically picked Plaintiff up off of Plaintiff's feet and forcibly threw Plaintiff on the ground face down.

131.    Defendant's SHERIFF's deputy SHARMAN then proceeded to put Defendant SHARMAN's knee in the middle of Plaintiff's back.

132.    Handcuffs were then placed on the Plaintiff by HEATH.

133.    Plaintiff was subsequently transferred to the Defendant SHERIFF'S jail.

134.    Plaintiff's husband had informed Defendant SHERIFF by and through defendant deputies that a firearm belonging to Plaintiff's husband was in Plaintiff's vehicle.

135.    The statement of the Plaintiff's husband was incorrect. The firearm in Plaintiff's vehicle belonged to Plaintiff.

136.    Without Plaintiff's knowledge or consent, Defendant SHERIFF, by and through Defendant SHERIFF'S deputies, entered into Plaintiff's vehicle and removed Plaintiff's firearm.

137.    Without Plaintiff's knowledge or consent, Defendant SHERIFF gave the firearm removal from Plaintiff's vehicle to Plaintiff's husband.

138.    In giving that firearm to the Plaintiff's husband, Defendant SHERIFF'S

deputies made their own determination as to the owner of that firearm and failed to follow any legal or other procedures to determine rightful ownership.

139.    No formal charges were brought against the Plaintiff for possession and/or theft of that firearm, nor do any law enforcement agencies intend on filing formal charges against the Plaintiff.

140.    The State of Florida has clearly defined statutory policies and procedures in place for law enforcement to follow when removing items allegedly used in criminal activity, and the detention of those items, and/or giving those items to a third party, and failing to follow those procedures is a violation of individual's right to due process. See Florida Statute 932.701– 932.704.

141.    Defendant SHERIFF law enforcement officers, in removing that item, and then giving it to the Plaintiff's husband, failed to follow those statutory procedures.

142.    As a result, Plaintiff suffered loss of the Plaintiff's firearm of an estimated $500.

WHEREFORE Plaintiff demands judgment for damages against Defendant SHERIFF and trial by jury.

## COUNT VII

## VIOLATION OF CONSTITUTIONAL RIGHT TO
## DUE PROCESS AS TO DEFENDANT SCOTTY RHODEN, IN HIS OFFICIAL
## CAPACITY AS SHERIFF OF BAKER COUNTY

On or about August 26, 2018, the Plaintiff was outside the residence of Plaintiff's husband located at 76 N. Lowder St., Macclenny, FL.

143.    The Plaintiff was at that residence for the purpose of retrieving money owed

by the Plaintiff's husband to the Plaintiff.

144.    Plaintiff had been invited by Plaintiff's husband.

145.    The Defendant SHERIFF arrived at that location by and through the Defendant SHERIFF'S deputies SHARMAN, along with HEATH and HIGGINBOTHAM, who approached the Plaintiff.

146.    Upon approaching the Plaintiff, the Defendant SHERIFF, by and through SHARMAN, along with HEATH and HIGGINBOTHAM, asked why the Plaintiff was at that location.

147.    The Plaintiff responded Plaintiff's husband invited Plaintiff such that Plaintiff could receive those monies.

148.    Upon questioning of the Plaintiff's husband by the Defendant SHERIFF'S deputies, SHARMAN, along with HEATH and HIGGINBOTHAM, requested the Plaintiff leave the residence.

149.    The Plaintiff requested information from HEATH as to the status of the law as to whether the Plaintiff was required to leave as the Plaintiff was married to the occupant.

150.    While HEATH was speaking with the Plaintiff, Defendant SHERIFF'S Deputy SHARMAN began to yell, moving towards the Plaintiff, stating the Plaintiff was going to jail.

151.    Plaintiff began to back towards Plaintiff's car with Plaintiff's hands in the air indicating Plaintiff was leaving.

152.    Plaintiff's husband proceeded to state to Defendant SHERIFF's deputies, SHARMAN, HEATH and HIGGINBOTHAM, the Plaintiff was leaving.

153.    Defendant SHERIFF by and through Defendant SHERIFF'S Deputy SHARMAN, while Plaintiff was backing up towards Plaintiff's vehicle, then proceeded to grab Plaintiff by Plaintiff's arms, physically picked Plaintiff up off of Plaintiff's feet and forcibly threw Plaintiff on the ground face down.

154.    Defendant's SHERIFF's deputy SHARMAN then proceeded to put Defendant SHARMAN's knee in the middle of Plaintiff's back.

155.    Handcuffs were then placed on the Plaintiff by HEATH.

156.    Plaintiff was subsequently transferred to the Defendant SHERIFF'S jail.

157.    Plaintiff's husband had informed Defendant SHERIFF by and through defendant deputies that a firearm belonging to Plaintiff's husband was in Plaintiff's vehicle.

158.    The statement of the Plaintiff's husband was incorrect. The firearm in Plaintiff's vehicle belonged to Plaintiff.

159.    Without Plaintiff's knowledge or consent, Defendant SHERIFF, by and through Defendant SHERIFF'S deputies, entered into Plaintiff's vehicle and removed Plaintiff's firearm.

160.    At the time that the Defendant SHERIFF, by and through Defendant's deputies entered into Plaintiff's vehicle, there was no warrant, the Plaintiff's husband had not signed a criminal complaint, nor was there cause to enter the Plaintiff's vehicle.

161.    Without Plaintiff's knowledge or consent, Defendant SHERIFF gave the firearm removed from Plaintiff's vehicle to Plaintiff's husband.

162.    In giving that firearm to the Plaintiff's husband, Defendant SHERIFF'S deputies made their own determination as to whether there was a complaint of theft, who

that firearm belonged to, and failed to follow any legal or other procedures to determine rightful ownership of that item.

163.    No formal charges were brought against the Plaintiff for possession and/or theft of that firearm, nor do any law enforcement agencies intend on filing formal charges against the Plaintiff.

164.    Pursuant to the 5th and 14th amendments to the United States Constitution, the plaintiff had the right not to be deprived that the Plaintiff's personal property without due process of law.

165.    To the Plaintiff's best information and belief, Defendant SHERIFF had no policies or procedures in place for settling and/or resolving property disputes between two (or more) individuals, one of whom alleged the other was holding their property and what procedures to follow.

166.    In failing to have those policies and procedures in effect, the Defendant SHERIFF failed to train Defendant SHERIFF'S deputies the property could not be removed from an individual without due process of law and given to a second individual without due process of law.

167.    Defendant SHERIFF's failure to have policies and procedures in effect and/or failure to train Defendant SHERIFF'S deputies amounted to deliberate indifference to the rights of individuals such as the Plaintiff in violation of the 5th and 15th amendments to the United States Constitution.

168.    As a result, Plaintiff was deprived of Plaintiff's property and continues to be deprived of Plaintiff's property.

169.    Plaintiff has retained undersigned counsel to represent Plaintiff in this matter and agreed to pay counsel a reasonable fee.

WHEREFORE Plaintiff demands judgment for damages against defendant SHERIFF, attorney's fees pursuant to full 42 U.S.C. §1988 and trial by jury.

DATED:   November 2, 2022

/S/David W. Glasser
DAVID W. GLASSER, ESQUIRE
118 Orange Avenue
Daytona Beach, Florida 32114
Telephone: 386-252-0175
Facsimile: 386-257-0246
Fla. Bar No. 780022
Email: david@dglasserlaw.com
legal@dglasserlaw.com
Attorney for Plaintiff